### PORTER & a. *v.* CARPENTER.

On the question whether certain guaranties furnished by the signers of a bond for the performance of its condition are "proper," evidence of the pecuniary standing and ability of the signers themselves may be received.

When trustees, charged with the duty of determining whether the guaranties furnished were proper before executing to the signers a lease of the trust property, took such guaranties as prudent men take in the management of their own affairs under circumstances requiring the same amount of security, it was held that the guaranties were proper, within the meaning of the instrument creating the trust.

The signers of the bond conveyed to the trustees a tract of land on which it was proposed to erect buildings for manufacturing purposes, said buildings when completed, with the land, to be made over to a corporation to be formed under the general law; and it was agreed between them and the trustees that they should be paid for said land in stock of the contemplated corporation. *Held*, that a valid agreement by them that such stock should stand pledged for the performance of the bond constituted a guaranty.

ASSUMPSIT, upon the following subscription-paper, to which the defendant's name was subscribed for eight shares:

" The undersigned agree to pay the sums of money set against our names respectively to Royal H. Porter, George W. Tilden, and Henry O. Cooledge [the plaintiffs], who are hereby appointed trustees for the purpose of holding, managing, and expending the money hereby subscribed, and the property which may be purchased therewith, or in which the same may be invested. This subscription is made upon the following conditions,—that when the

sum of fifty thousand dollars is subscribed, the said trustees are to erect upon a lot of land lying northerly of Cheshire Railroad, belonging to Messrs. Madison Fairbanks, Daniel Buss, Horace Adams, and John Humphrey, in accordance with such plans as may hereafter be adopted and given them by the subscribers, or by a committee which they may chose for that purpose, a building or buildings suitable for manufacturing and mechanical purposes, and to furnish the same with appliances for steam-power, main shafting, with gearing and belting appropriate therefor. And when said buildings and machinery are completed, the whole property is to be leased to the said Madison Fairbanks and his associates for a term of ten years, at a rent of six per cent. on the whole investment, said Fairbanks & Co. paying all taxes assessed thereon, and keeping the buildings and fixtures properly insured and repaired at their own expense, giving said lessees the privilege of purchasing said property at any time during the term of said lease, by payment of the amount expended, with interest or rent to the time of such purchase; provided, however, that the said Fairbanks, Buss, Adams, and Humphrey, before the commencement of said buildings, shall furnish proper guarantees for the acceptance and fulfilment of such lease, and shall subscribe to this paper and convey to the said trustee the aforementioned tract of land which they purchased of Messrs. Holt, Boyce, and Greeley, at the cost of the same to them, to be held in trust for the purposes stated in the conditions of this instrument. And the subscribers hereto agree to form themselves into a voluntary corporation under the general laws of this state for the purpose of holding and managing the property acquired under the terms of this subscription, and thereupon the said trustees shall convey to the corporation all the property so held by them in trust; and the said corporation shall become bound to fulfil all contracts made in accordance with the terms above stated by said trustees.

"Each share hereby subscribed to be one hundred dollars, and to be paid at such times and in such portions as the trustees shall order   Keene, January 30, 1871."

May 29, 1871, $50,000 having been subscribed, Fairbanks, Buss, Adams, and Humphrey gave the plaintiffs an obligation signed by themselves and one Homer E. White, which was admitted to be a sufficient compliance with the terms of the above paper, unless it was insufficient for want of being secured by proper guarantees; and on the same day conveyed to the plaintiffs the land mentioned in said paper, and thereupon became entitled to stock in the contemplated corporation to the amount of $10,000. The plaintiffs on the same day contracted for the erection of buildings, and for other improvements of the property, for $97,000.

In April, 1872, the buildings, with power and fixtures, being completed, the corporation, which had then been formed in pursuance of the foregoing agreement, executed a lease of the property

to Fairbanks, Buss, Adams, and Humphrey, according to the terms of the paper.

The only question at the trial was, whether Fairbanks, Buss, Adams, and Humphrey, before the commencement of the buildings, furnished proper guarantees for the acceptance and fulfilment of the lease.

Subject to the defendant's exception, the plaintiffs were permitted to show the pecuniary means of Fairbanks, Buss, Adams, and Humphrey, May 29, 1871; also, that before the acceptance by them of the obligation aforesaid, it was agreed that the stock of said Fairbanks, Buss, Adams, and Humphrey, in the contemplated corporation, should stand pledged for the performance of said obligation.

Against the defendant's objection, the plaintiff, Porter, was allowed to testify to the pecuniary credit and standing of Fairbanks, Buss, Adams, and Humphrey, May 29, 1871, and to give his opinion as to what they were then worth, also to give statements previously made to him by White as to the amount of his property.

The defendant testified to the standing and credit of Fairbanks, Buss, Adams, and Humphrey. His counsel inquired of him how much each of them was worth, in his opinion, May 29, 1871. The court excluded the evidence, and the defendant excepted.

It appeared that in January, 1873, in consequence of the breaking of machinery, extraordinary repairs to a large amount were required to be made by the corporation. The defendant offered to show the extent and kind of repairs which were then made, as tending to show the probable amount of annual repairs, and the amount for which guarantees should have been required. This evidence was excluded, and the defendant excepted.

The court instructed the jury that if the pecuniary condition of Fairbanks, Buss, Adams, and Humphrey was such as to make their names sufficient security for the acceptance and fulfilment of the lease, it was not necessary that any collateral security should be furnished by them, but the plaintiffs would have been justified in taking their names alone; that, in determining whether proper guarantees were taken, the jury might take into consideration the pecuniary condition of Fairbanks, Buss, Adams, and Humphrey, in connection with any additional guarantees that were actually taken; that the additional security furnished by having the name of White attached to the obligation might also be considered; that the amount of responsibility which it was the duty of the plaintiffs to require was the damage which might be anticipated from a failure to abide by the terms of the agreement at any stage of the proceedings, either before or after the taking of a lease; that if the plaintiffs took from Fairbanks, Buss, Adams, and Humphrey such guarantees as prudent men take in the management of their own affairs under circumstances requiring the same amount of

security, it was a sufficient compliance with the requirements of the subscription paper ;—to which the defendant excepted.

The defendant requested the court to instruct the jury that the phrase in the subscription-paper, "proper guarantees for the acceptance and fulfilment of such lease," means that Fairbanks, Buss, Adams, and Humphrey should procure other persons, of sufficient ability or appearing to be of sufficient ability, or other substantial security besides their own names, sufficient or apparently sufficient, fully to meet and satisfy the full amount of the liabilities that would result, provided the principals should refuse to accept such lease as the subscription-paper required, or should during any part of the ten years fail to perform its requirements. The court declined to give these instructions, and the defendant excepted.

In response to a question submitted to them by the court, the jury found specially that, including the verbal agreement for the pledge of stock when it should be issued, Fairbanks, Buss, Adams, and Humphrey did furnish proper guarantees for the acceptance and fulfilment of the lease before the commencement of the buildings.

*Wheeler & Faulkner*, for the plaintiffs.

*F. F. Lane*, for the defendant.

FOSTER, J.    One of the conditions, expressed in the paper, upon which the defendant was to pay his subscription, was, that Fairbanks, Buss, Adams, and Humphrey, before the commencement of buildings, should furnish proper guarantees for the acceptance and fulfilment of the lease to be made to them ; and the question tried was whether they did so.    It is very plain that the word guarantees is used here as the equivalent of guaranties, that is, promises, warranties, securities outside the obligors themselves, and not as the correlative of guarantor, which would make the stipulation senseless.

What Fairbanks, Buss, Adams, and Humphrey did in the way of furnishing guarantees, or guaranties, was (1) to procure the signature of White to their obligation, and (2) to enter into an agreement for the pledge of their stock in the contemplated corporation as security for its performance.    Doubtless the trustees could enforce performance of this agreement when the corporation came to be formed, and the stock issued to the signers of the obligation in payment for their land ; and so we think it must be held that "guarantees" were furnished (whether "proper," or not, is another question), and that the defendant's request for instructions on this point, as well as his objection to evidence concerning the pledge of stock, was properly overruled.

On the trial of the question whether the guarantees furnished

were " proper," the plaintiffs were permitted to show the pecuniary situation of Fairbanks and his associates May 29, 1871. In this we do not see any error. What would be proper, that is, sufficient, collateral security for the performance of his contract obligation by a man of large estate, might, and ordinarily would, fall far short of being proper security for the performance of a similar and equal obligation by a bankrupt. It was ·a matter upon which the trustees were bound to exercise a sound and honest judgment. No man of practical sense, whether acting for himself or·for others, could shut his eyes to the pecuniary condition of the principal in determining the amount and character of guaranties proper to be required for insuring performance of his undertaking.

The testimony of the plaintiff, Porter, as to what he understood to be the credit, standing, and means of Fairbanks, Buss, Adams, and Humphrey at the time he accepted their obligation, as well as his statement of what White told him concerning his own affairs, was admitted to show whether the guaranties taken were such' as prudent men would take in the management of their own affairs; and the court instructed the jury, in substance, that this would be a fair measure for determining whether the guaranties taken were proper. This seems to be reasonable, and we think the exceptions based on the idea that something more was required must be overruled.

The opinion of the defendant as to how much Fairbanks, Buss, Adams, and Humphrey were worth May 29, 1871, was immaterial. His conduct was not in question, as in the case of Porter, and the evidence was properly excluded. Nor was the amount expended for extraordinary repairs in January, 1873, a matter which the jury could fairly be permitted to consider on the question of what would be proper guaranties, because the paper does not fairly import that extraordinary occasions were to be foreseen and provided against.

It may be doubtful whether the instruction, that, if the pecuniary condition of Fairbanks, Buss, Adams, and Humphrey was such as to make their names sufficient security, it was not necessary that any collateral security should be furnished by them, can be sustained. Perhaps, by a fair interpretation, the guarantees called for by the paper mean something in the way of promises or securities outside the names of the principal obligors. But the special finding of the jury under the other instructions given seems to make this somewhat too narrow statement immaterial. The substance is, that the jury found, under instructions to which there is no valid objection, that, considering the pecuniary condition of Fairbanks, Buss, Adams, and Humphrey, their agreement for the pledge of stock, and the signing of their obligation by White, the guarantees were proper. This, we think, is sufficient, and that there must be

*Judgment on the verdict.*